IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| GEORGE LEE TUCKER, II | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:14cv659 |
| BRAD LIVINGSTON, ET AL. | § | |

### MEMORANDUM ORDER OVERRULING PLAINTIFF'S OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Plaintiff George Lee Tucker II, a prisoner of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding through counsel, filed this civil rights lawsuit under 42 U.S.C. §1983 and the Religious Land Use and Institutionalized Persons Act complaining of violations of his rights. This Court referred the matter to the Honorable K. Nicole Mitchell, United States Magistrate Judge, for consideration pursuant to applicable laws and orders of this court.

Plaintiff contended he is an adherent of a group known as the Nation of Gods and Earth (NOGE), described as an off-shoot of the Nation of Islam. He stated at the time of his lawsuit, the Muslim groups, including NOGE, assembled together for services, but these services were run by practitioners of the Sunni sect of Islam. According to Plaintiff, NOGE adherents were not permitted to express their personal religious beliefs during services, and they could not hold separate services. For relief in his lawsuit, Plaintiff asked that NOGE members be accommodated with time and space for assembly and practice, that TDCJ assist in the location and recruitment of a "God Centered Cultural Representative," that TDCJ permit the wearing of crowns and the displaying of the "universal flag," that NOGE adherents be permitted to take their lessons and materials to their meetings, and that NOGE adherents be permitted to purchase approved NOGE materials, publications, and symbols from NOGE vendors. All of the claims except for the request for time and space for assembly were ultimately determined to be unexhausted.

1

An evidentiary hearing was conducted, at which a TDCJ representative named Chaplain Lowery testified that NOGE was shown at that time on the list of faith groups as a separate, non-traditional religious group. After reviewing the summary judgment evidence, the district court determined that NOGE had a documented history of connections to prison violence and the teaching of racial supremacy, citing a number of cases including decisions from the Third and Fourth Circuits as well as various district courts. The district court concluded that TDCJ had a compelling governmental interest in preventing racial supremacist groups from congregating and that this was the least restrictive means of preventing unnecessary conflict, and granted the defendants' motion for summary judgment.

On appeal, the Fifth Circuit affirmed the dismissal of Plaintiff's other claims for failure to exhaust, but remanded the claim of space and time for congregation back to the district court.

While the litigation was ongoing, an affidavit from Timothy Jones, Deputy Director of Religious Services for TDCJ, stated that on April 19, 2019, the Religious Practices Committee took NOGE out of the other/non-traditional category and placed the group within the Muslim religious group. This change allowed the NOGE adherents to attend Muslim services and also permitted them to have a secondary NOGE service depending on the availability of time, space, security, and an approved volunteer. The committee also approved a request which allowed prisoners to send, receive, and possess Nation of Gods and Earth literature in accordance with established policy and procedure. Religious holidays were declared to be a secondary service which may be scheduled dependent on availability of time, space, security, and an approved volunteer. Finally, the committee added February 22, Father Allah's physical birthday, to the holy day/observance day list as a recognized holy day.

Jones' affidavit further states that on May 3, 2019, Tucker and other NOGE members were notified that NOGE had been placed under the Muslim religious group. While they are not required to attend Muslim primary services, they may do so, and may also request secondary NOGE services dependent on the availability of time, space, security, and approved volunteers. They were also

2

notified that they could send, receive, and possess NOGE literature, that February 22 was recognized as a holy day, and that religious holiday services could be scheduled dependent on availability of time, space, security, and an approved volunteer. (Docket no. 157, p. 2). A later affidavit from Jones (docket no. 163-1. p. 1) details his efforts to contact free-world NOGE representatives in an effort to find outside volunteers.

On May 20, 2019, the Defendant filed a motion for summary judgment based on mootness. The Defendant argued that because NOGE members, including Tucker, can now seek separate NOGE services, dependent on the availability of time, space, security, and an approved volunteer, his claim is moot.

Tucker also filed a motion for summary judgment on May 20, 2019. This motion devoted considerable space to arguments which paralleled those addressed by the Fifth Circuit. In one brief reference to the change wrought by the Religious Practices Committee, Tucker stated that notwithstanding this change, "the State still has never accommodated separate Nation accommodation for Mr. Tucker and other Nation adherents nor has committed to doing so." He asserted that the change conflicted with previous positions taken by TDCJ and asked that the Court order the State to formulate a revised policy which affords full and equal opportunity to participate in group observance of Nation honor days, General Civilization classes, Parliaments and rallies, and to accommodate the Nation with the provision of scheduled times and venues for Nation assembly and practice.

In a response to the Defendant's motion for summary judgment, Tucker asserted that "the State cannot prove that its failure to accommodate separate Nation congregation advances a compelling governmental interest through the least restrictive means." He stated that while the State says he can seek secondary services dependent on the availability of time, space, security, and an approved volunteer, "the State has failed to provide evidence - and does not even assert - that TDCJ has provided Mr. Tucker separate time and space to exercise his beliefs through Nation congregation, as he has requested, nor that any such hypothetical Nation congregation will ever

3

occur, nor that Mr. Tucker could ever attend such congregation." Tucker categorized the State's claim that separate Nation congregations would be allowed dependent on availability of time, space, security, and an approved volunteer as "administrative boilerplate" and asserted that if the State intended to allow Tucker to attend separate Nation congregations, it could say so, but it has not.

After review of the pleadings, the magistrate judge entered a Report recommending that the Defendants' motion for summary judgment based on mootness be granted. After tracing the procedural history of the case, the magistrate judge cited *Brown v. Collier*, 929 F.3d 218, 224 (5th Cir. 2019). In that case, the Fifth Circuit upheld the "Scott Plan," which in relevant part requires direct supervision of all religious gatherings of more than four prisoners, and permits each religious group to have a group worship service for one hour per week which is directly supervised by prison staff or an outside authorized volunteer. *Id.* at 226. The prison has designated ten major faith groups, which each have weekly congregational services, and smaller groups within the major faith groups, such as NOGE, may have services dependent on time, space, security, and the availability of an outside volunteer. TDCJ Administrative Directive 07.30; *Baker v. Davis*, civil action no. 5:17cv78, 2018 WL 4690959 (E.D.Tex., August 20, 2018), *Report adopted at* 2018 WL 4685459 (E.D.Tex., September 28, 2018), *appeal dismissed* 2019 WL 2067717 (5th Cir., March 14, 2019).

The magistrate judge also examined *Jones v. Davis*, civil action no. 4:16cv193, 2018 WL 6591582 (S.D.Tex., December 13, 2018), in which the plaintiff Sam Jones sought injunctive relief under RLUIPA and the First Amendment regarding TDCJ's policies prohibiting the sculpting of religious beards and requiring inmates to shave once a year for identification purposes. The Defendant argued that the case was moot because TDCJ changed its policy so as to allow prisoners who wear religious beards to trim and shape their beards according to their beliefs and to eliminate the annual shaving requirement. The district court dismissed the case as moot despite Jones' arguments that his claims were capable of repetition yet evading review and that TDCJ changed its policy in bad faith to "hoodwink" the Court.

4

The magistrate judge concluded that the change in policy rendered by the Religious Practices Committee rendered Plaintiff's claims moot because NOGE, like other faith groups, can now have separate services subject to the availability of time, space, security, and outside volunteers. The summary judgment evidence shows that prison officials have made efforts to secure outside volunteers, but this lack of success is not the result of any prison policies. *Brown*, 929 F.3d at 230 (discussing requirement of outside volunteers); *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2010) (outside volunteer requirement does not place a substantial burden upon prisoner's religious exercise). The magistrate judge stated that the reclassification of NOGE as a faith group which can receive separate services subject to the availability of time, space, security, and an outside volunteer is a governmental action entitled to a presumption of good faith, *see Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), and there is no evidence that TDCJ intends to revoke this classification. Finally, the magistrate judge determined that the "capable of repetition yet evading review" exception to the mootness doctrine was not applicable to this case.

In his objections, Plaintiff complains that there is no evidence that TDCJ has rescinded its position that NOGE congregation poses an unacceptable security risk. The undisputed summary judgment evidence shows that TDCJ has notified Plaintiff and other NOGE adherents that NOGE services will be permitted subject to the availability of time, space, security, and an outside volunteer, and that TDCJ personnel have sought to locate outside volunteers to conduct such services. These attempts to facilitate NOGE separate services plainly show that TDCJ no longer believes that NOGE congregation poses an unacceptable risk. This objection is without merit.

Next, Plaintiff argues that the fact that NOGE has been classified under the Muslim faith group is relevant only to Plaintiff's ability to attend Muslim services, which is not at issue here. It is true that Plaintiff's ability to attend Muslim services is not at issue; rather, the relevant fact is that NOGE separate services will be permitted subject to the availability of time, space, security, and an outside volunteer. This objection is without merit.

Third, Plaintiff contends the availability of a volunteer is irrelevant because the State has never denied his long-requested accommodation on the basis that a volunteer is unavailable, and Plaintiff does not challenge the volunteer requirement. Rather, he states he challenges the continued denial of his requests based on the assumptions that Plaintiff and fellow NOGE adherents hold supremacist beliefs and that allowing a supremacist group to congregate threatens prison security, *citing Tucker v. Collier*, 906 F.3d at 303. While it may be true that Plaintiff's previous requests for accommodation were denied for these reasons, all of these requests were made *before* the April 19, 2019 decision by the Religious Practices Committee to permit NOGE congregation subject to the generally applicable requirements of time, space, security, and the availability of an outside volunteer. Plaintiff's objection on this point succinctly demonstrates why his claim is now moot. *See DeMoss v. Crain*, 636 F.3d 145, 150-51 (5th Cir. 2011) (abandonment of policy that general population prisoners on cell restriction could not attend religious services mooted claim for declaratory and injunctive relief concerning that policy).

Plaintiff complains that the magistrate judge did not consider Tucker's affidavit, which he says asserts that TDCJ has never granted his requests to attend NOGE congregation and has never informed him that he could attend NOGE congregation even if administrative requirements unrelated to racial supremacy-based concerns were satisfied. This affidavit, which is undated, acknowledges that Plaintiff has been told that February 22 has been added to the holy day list, but says that he has never been told he would be permitted to attend NOGE congregation or to engage in any other communal NOGE exercise on that day or any other day. The fact that no previous requests have been approved is not disputed, given that TDCJ previously regarded NOGE as a supremacist racial group. The affidavit indicates that as of the date of the affidavit, Plaintiff had not received the May 3, 2019 notice from Jones indicating that NOGE adherents could request secondary services dependent on the availability of time, space, security, and approved volunteers, and the Court will assume this to be the case. Plaintiff nowhere states that a request for NOGE congregation has been made after the April 2019 decision by the Religious Practice Committee, much less that any such

6

request met the requirements of available time, space, security, and an outside volunteer. His affidavit offers nothing to overcome the Defendant's showing that the case is moot, and his objection on this point is without merit.

Plaintiff goes on to argue the Report errs by concluding that the voluntary cessation exception does not apply. He argues that the action of the Religious Practice Committee does not amount to an "official state-wide policy," pointing to an administrative directive from 2014 and an undated faith code list which shows the Nation of Gods and Earth as falling under the "other/non-traditional" category. (Docket no. 158-15, p. 6). It is not disputed that at one time, TDCJ classified NOGE in the "other/non-traditional" category. As noted above, however, this was changed by the Religious Practices Committee in April of 2019.

In a similar vein, Plaintiff states that as a historical matter, TDCJ has previously revoked the Muslim classification and argues that the timing of the purported cessation suggests "a litigation-driven change." He contends that TDCJ has defended the lawsuit for five years by arguing that NOGE poses an unacceptable security risk, but then on the eve of summary judgment TDCJ argues that Plaintiff has received the relief sought. Plaintiff complains that the Report "ignores Plaintiff's account of the State's long, demonstrated history of posturing in this case, taking opportunistic, inconsistent positions in briefs and affidavits based on the exigencies of litigation." The fact that the State previously defended the case on the theory that NOGE was a racial supremacist group - a theory which the Fifth Circuit's decision made clear was untenable - does not show that the State is likely to revert to this theory in the future, particularly in light of the State's own efforts to secure outside volunteers so as to facilitate NOGE congregation. This objection is without merit.

Finally, Plaintiff asserts that the Report errs by saying no order could grant him more relief than the State has purportedly granted him because "the Court can and should enjoin the State from preventing Mr. Tucker from attending Nation congregation under its rationale that it has a narrowly tailored, compelling interest in denying Mr. Tucker's accommodation because Nation congregation

7

poses a security threat. Whether the State has justified that rationale for refusing to accommodate separate Nation congregation under RLUIPA is and has always been the issue litigated in this case."

As the magistrate judge correctly observed, the summary judgment evidence shows that the State has abandoned the position that NOGE is a racial supremacy group whose congregation *ipso facto* poses a security threat. This is made clear by the Religious Practices Committee's decision to permit NOGE congregation under the same conditions applicable to other small religious groups as well as by the prison officials' efforts to facilitate such congregation by seeking outside volunteers. The fact that the Court could hypothetically grant an injunction enjoining TDCJ not to carry out an abandoned policy does not show that the claim is not moot.[1]

Plaintiff sought by his lawsuit to achieve equal status and recognition for the Nations of Gods and Earth by other religious groups of comparable size within TDCJ. The decision of the Religious Practices Committee accomplished this goal by allowing the group to have separate services, subject to the generally applicable restrictions of time, space, security, and the availability of an outside volunteer, by allowing adherents to send, receive, and possess NOGE literature in accordance with generally applicable policies and procedures, and by recognizing February 22 as a holy day for the group. The magistrate judge properly concluded that the Plaintiff's claims are moot.

## ORDER

The court has conducted a careful *de novo* review of the objections in relation to the pleadings and the applicable law. *See* FED. R. CIV. P. 72(b). After careful consideration, the court concludes that Plaintiff's objections lack merit.

---

[1] Plaintiff's argument in this regard would carve a wide swath out of the doctrine of mootness. For example, under Plaintiff's theory, the claim in *Sossamon* would not have been moot because the district court could have issued an injunction ordering TDCJ not to prevent general population inmates on cell restriction from attending religious services. No such injunction issued, but the Fifth Circuit nonetheless held the claim moot because the practice had been discontinued.

Accordingly, Plaintiff's objections are **OVERRULED**. The findings of fact and conclusions of law of the magistrate judge are correct and the report of the magistrate judge is **ADOPTED**. The Defendant's motion for summary judgment based on mootness (docket no. 156) is **GRANTED** and the lawsuit is **DISMISSED WITHOUT PREJUDICE AS MOOT**. A final judgment will be entered in this case in accordance with the magistrate judge's recommendations. All motions not previously ruled upon are hereby **DENIED**.

**SIGNED** this the 4 day of **March, 2020.**

_____
Thad Heartfield
United States District Judge