IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| GEORGE LEE TUCKER, II, § § § Plaintiff, § § v. § Case No. 6:14-cv-659-JDK-KNM § TIMOTHY JONES, § § § Defendant. § § | |

ORDER ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff George Lee Tucker, II, a Texas Department of Criminal Justice inmate, brings this civil rights lawsuit against Defendant Timothy Jones, Deputy Director of Volunteer Services and Operations, Rehabilitation Programs Division, for the Texas Department of Criminal Justice, under the Religious Land Use and Institutionalized Persons Act alleging violations of his religious rights. The case was referred to United States Magistrate Judge K. Nicole Mitchell pursuant to 28 U.S.C. § 636. Before the Court are the parties' cross-motions for summary judgment. Docket Nos. 201, 202.

I.

Plaintiff has been an adherent of the Nations of Gods and Earths (NOGE) since 1999. Docket No. 202 at 4. Plaintiff first brought this lawsuit pro se seeking an injunction requiring TDCJ to accommodate NOGE with time and space for assembly and practice, assist in locating and recruiting a "God Centered Cultural

1

Representative," permit NOGE adherents to wear crowns and display the "universal flag," allow NOGE adherents to take lessons and materials to their meetings, and allow NOGE adherents to purchase approved NOGE materials, publications, and symbols from NOGE vendors. *See* Docket No. 1. The Court dismissed all of Plaintiff's claims except for the request for time and space for NOGE assembly and practice based on Plaintiff's failure to exhaust administrative remedies. *See* Docket Nos. 79, 91. The Court later rejected Plaintiff's request for time and space based on the view that NOGE was a racial supremacy group. *See* Docket Nos. 109, 113. The Fifth Circuit affirmed the dismissal of the unexhausted claims but reversed as to Plaintiff's request for time and space for assembly. *Tucker v. Collier*, 906 F.3d 295, 298–99, 306–07 (5th Cir. 2018).

While this litigation was ongoing, TDCJ placed NOGE into the Muslim religious category. Docket No. 201, Ex. A at 1. This allowed NOGE members to attend the weekly Muslim services and also permitted them to have a secondary NOGE service dependent on the availability of time, space, security, and an approved volunteer. *Id.* NOGE members were also allowed to send, receive, and possess literature in accordance with established policy and procedure. *Id.* February 22, NOGE's commemoration date of the physical birthday of Father Allah, was added to the holy day observance list as a recognized holiday. *Id.* Based on these changes, Defendant moved for summary judgment arguing that Plaintiff's remaining request for time and space for NOGE assembly and practice was moot. Docket No. 156. The Court agreed and dismissed the lawsuit as moot. Docket Nos. 175, 177. The Fifth

2

Circuit reversed, explaining that Plaintiff did not merely seek an equal right to apply for NOGE congregation, but for approval to congregate. *Tucker v. Gaddis*, 40 F.4th 289 (5th Cir. 2022). And Defendant had not given Plaintiff "any assurance" that it would approve his request to congregate. *Id.* at 293 ("[T]he government has not even bothered to give Tucker any assurance that it will permanently cease engaging in the very conduct that he challenges.").

Now before the Court are the parties' cross-motions for summary judgment on this remaining issue. Docket Nos. 201, 202.

Defendant's motion argues that Plaintiff's sole remaining claim—an injunction requiring TDCJ to accommodate NOGE with time and space to congregate—fails because TDCJ currently allows NOGE to have secondary services dependent on the availability of time, space, security, and an outside volunteer. Docket No. 201. But TDCJ has been unable to locate an outside volunteer for NOGE services. *Id.* at 4–5. Defendant further maintains that the Fifth Circuit has upheld TDCJ's religious-practices plan—known as the Scott Plan—which requires supervision by an outside volunteer, as the least restrictive means of carrying out compelling penological interests. *Id.* at 1–2, 8–9, 10–11.

Plaintiff's motion argues that attending Muslim services, as TDCJ allows for NOGE adherents, is not a religious exercise for him and that TDCJ policies have completely foreclosed NOGE congregation. Docket No. 202 at 14. Plaintiff contends that the RLUIPA substantial-burden analysis requires a case-by-case, fact-specific analysis to determine whether the governmental action or regulation in question

3

imposes a substantial burden on the adherent's religious exercise. *Id.* at 22. He argues that under the facts of this case, the Scott Plan imposes a substantial burden upon his religious exercise. *Id.* at 23–25. While he acknowledges the lack of an outside volunteer, Plaintiff argues that the Fifth Circuit has already held that TDCJ's categorical ban on NOGE congregation substantially burdens his religious exercise. *Id.* at 13–14. Plaintiff maintains that TDCJ has presented nothing more than an abstract interest in security, which he argues is not sufficient under RLUIPA. *Id.* at 17.

## II.

On August 18, 2023, Judge Mitchell issued a Report and Recommendation ("the Report") recommending that the Court deny both parties' motions for summary judgment. After tracing the history of the case and summarizing the parties' contentions, the Magistrate Judge discussed the relevant standards under RLUIPA and case law applying those standards.

In *Adkins v. Kaspar*, 393 F.3d 559, 562, 564 (5th Cir. 2004), a small religious group called Yahweh's Evangelical Assembly complained that TDCJ allowed it to congregate only under the supervision of an outside volunteer, who could visit the prison only once a month rather than weekly as the group preferred. The Fifth Circuit determined that the plaintiff was prevented from congregating with fellow adherents of his religion as often as he wished based on the dearth of available outside volunteers rather than a prison rule prohibiting such gatherings. *Id.* at 571. The court further explained that TDCJ's policy requirement of an outside volunteer did not place a substantial burden upon the plaintiff's religious exercise. *Id.*

4

In *Brown v. Collier*, 929 F.3d 218 (5th Cir. 2019), TDCJ sought to terminate a 1977 consent decree that exempted Muslim inmates from the requirement that prison staff or an outside volunteer supervise religious services based on challenges from a member of another religious group. Muslim inmates argued that terminating the consent decree and requiring supervision of all services imposed a substantial burden by limiting Muslims to one hour of group study per week. *Id.* at 229. TDCJ argued that it was not the supervision requirement that imposed the burden, but rather the lack of available Muslim outside volunteers to supervise services. *Id.* at 230. Examining prior decisions concerning the outside volunteer requirement, the Fifth Circuit reiterated that determining whether a government action imposes a substantial burden requires a case-by-case, fact-specific inquiry. *Id.* Under the facts of the *Brown* case, the court concluded that it was not TDCJ's requirement of outside volunteers or direct supervision that imposed the burden, but the lack of volunteers. *Id.* at 231.

By contrast, in *Mayfield v. Texas Department of Criminal Justice*, 529 F.3d 599, 608–10, 613–14 (5th Cir. 2008), the Fifth Circuit reversed summary judgment in favor of TDCJ where it found fact issues as to the neutrality of TDCJ's volunteer supervision requirement. There, Odinist adherents were allowed to congregate only under supervision of a volunteer, who could visit only once every eighteen months. *Id.* at 614. The court found fact disputes as to whether TDCJ allowed other religious groups to meet without an outside volunteer. *Id.* Thus, the court held that TDCJ's

alleged disparate application of the policy potentially burdened the plaintiff's religious exercise. *Id.* at 614–15.

Finally, in *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 335 (5th Cir. 2009), the Fifth Circuit also reversed summary judgment in favor of TDCJ based on issues of material fact. In that case, TDCJ had denied the plaintiff access to the unit's chapel to pray based on security reasons. *Id.* at 321–23. But the plaintiff testified that TDCJ allowed prisoners to use the chapel for several non-religious purposes that posed the same security concerns as would worship services. *Id.* at 323–24. The court found unresolved issues of material fact as to whether the blanket denial of religious worship in the chapel amounted to a substantial burden on the plaintiff's religious exercise and whether such a ban furthered a compelling state interest using the least restrictive means. *Id.* at 334–35.

Based on these cases, the Report points out, fact questions remain concerning whether TDCJ's bar on NOGE congregation substantially burdens Plaintiff's religious exercise and whether it represents the least restrictive means of furthering a compelling governmental interest. Docket No. 216 at 32–33. Accordingly, the Report recommends denying the parties' motions for summary judgment. Both parties objected. Docket Nos. 220, 222.

Where a party timely objects to the Report and Recommendation, the Court reviews the objected-to findings and conclusions of the Magistrate Judge de novo. 28 U.S.C. § 636(b)(1). In conducting a de novo review, the Court examines the entire record and makes an independent assessment under the law. *Douglass v. United*

*Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

### III.

In his objections, Plaintiff maintains that there are no disputed issues of fact, rendering summary judgment in his favor appropriate. He argues that it is undisputed that he is a NOGE adherent, that TDCJ does not currently allow any NOGE congregation, and that there were no security risks during the time period that NOGE was allowed to congregate. Docket No. 220 at 2–3. The Fifth Circuit, Plaintiff contends, "has established that prohibiting an individual from congregating with their faith imposes a substantial burden on religious exercise." *Id.* at 5 (citing *Mayfield*, 529 F.3d at 614). He also argues that TDCJ has provided no evidence of any compelling interest furthered by denying Plaintiff's specific request for NOGE congregation. *Id.* at 6. And even if TDCJ had a compelling interest, Plaintiff explains, TDCJ is not applying the least restrictive means available to further that interest. *Id.* at 6–7. Because the undisputed facts show that Plaintiff's religious exercise is substantially burdened by TDCJ's policy, that TDCJ's stated interest in security is not compelling, and that Mr. Tucker's complete inability to congregate with fellow NOGE adherents is not the least restrictive means of furthering TDCJ's interest, Plaintiff argues that he is entitled to summary judgment. *Id.* at 7.

But Plaintiff has not shown that the current TDCJ policy—which would allow Plaintiff to congregate with other NOGE adherents under the supervision of an outside volunteer—is a substantial burden on Plaintiff's religious exercise as a matter

7

of law. As the Fifth Circuit has repeatedly stated, TDCJ's volunteer-supervision requirement generally does not impose a substantial burden on religious exercise. *Adkins*, 393 F.3d at 571; *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007); *Brown*, 929 F.3d at 231.[1] And while TDCJ does not allow standalone NOGE congregation without a volunteer, it does allow Plaintiff and other NOGE adherents to attend Muslim religious services.[2] Docket No. 202 at 14. Thus, whether this specific implementation of the volunteer policy represents a substantial burden on Plaintiff's religious exercise remains a disputed fact question. *See Sossamon*, 560 F.3d at 334 (genuine issues of material fact remained as to "substantial burden" where the plaintiff's religious practice was denied at all times, whether or not volunteers were present).

Further, even if TDCJ's volunteer policy imposes a substantial burden in this case, fact questions remain as to whether the policy represents the least restrictive means of furthering a compelling government interest. While Plaintiff argues that NOGE adherents were allowed to meet for several months in 2022 without incident, it is not clear on the current record why this exception was made or why this practice was stopped.[3] Plaintiff also fails to satisfactorily address the "ripple effect" Defendant argues would result from an ongoing policy exception for NOGE adherents

---

[1] To be sure, in those cases, the plaintiffs were not barred from meeting indefinitely due to a complete lack of volunteers. *Adkins*, 393 F.3d at 562 (volunteer was available monthly but not weekly or on specific holy days); *Baranowski*, 486 F.3d at 117–119 (Jewish services were generally held at least monthly, but were canceled for two months when a rabbi or qualified volunteer was not available); *Brown*, 929 F.3d at 226 (Muslim inmates could attend a weekly, one-hour service but were denied additional meetings due to a lack of outside volunteers).

[2] NOGE teachings are based in part on those of Islam. Docket No. 202 at 1.

[3] TDCJ chaplain Cynthia Lowry simply states: "Once I was made aware of this non-compliance with the Scott Plan, that practice was stopped in November 2022." Docket No. 201-3 at 3.

8

to meet without a volunteer. *See* Docket No. 203 at 25–27. As Chaplain Lowry explains, allowing specific services for NOGE could lead to "an extremely difficult, costly, and perhaps impossible situation" due to the substantial number of different faith practices espoused by TDCJ inmates. *Id.* at 26 (citing Docket No. 201-3 at 2–3).

Accordingly, Plaintiff is not entitled to summary judgment.

## IV.

Defendant objects that it is undisputed that the parties have been unable to secure an outside NOGE volunteer despite multiple attempts. Docket No. 222 at 1. Thus, Defendant argues, it is the lack of available volunteers rather than TDCJ policy that is substantially burdening Plaintiff's religious exercise. *Id.* at 2–4.

While the parties do not dispute that NOGE volunteers are generally unavailable, there is no per se rule that the absence of a volunteer insulates TDCJ from a religious exercise claim. *Brown*, 929 F.3d at 230. On the contrary, *Brown* requires a case-by-case, fact-specific inquiry as to whether a government action or regulation imposes a substantial burden. *Id.* And as discussed above with regard to Plaintiff's objections, whether the specific implementation of the volunteer policy here—which essentially bars NOGE congregation indefinitely due to an apparent lack of available volunteers—represents a substantial burden on Plaintiff's religious exercise remains a disputed fact question.

Further, Defendant has failed to adequately show, on the current record of this case, that TDCJ's restrictions on NOGE congregation are the least restrictive means available to further a compelling government interest. Specifically, Defendant fails to address the undisputed fact that TDCJ allowed inmates to practice basketball

9

unsupervised in the gym, but cannot allow similar accommodations to the NOGE congregation.

Accordingly, Defendant is not entitled to summary judgment.

\*   \*   \*

Having conducted a de novo review of the parties' objections, the record in this case, and the Magistrate Judge's Report, the Court has determined that the Report of the Magistrate Judge is correct, and the parties' objections are without merit. Accordingly, the Court hereby **ADOPTS** the Report of the Magistrate Judge (Docket No. 216) as the opinion of the District Court.  The Court therefore **DENIES** Plaintiff's motion for summary judgment (Docket No. 202) and Defendant's motion for summary judgment (Docket No. 201).

So **ORDERED** and **SIGNED** this **29th** day of **September, 2023.**

*[Signature]*
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE